Commonwealth ex rel. *v.* Cook, Appellant.

Argued April 20, 1936.

Before Keller, P. J., Cunningham, Baldrige, Stadt-feld, Parker, James and Rhodes, JJ.

*Morton Meyers,* of *Graham, Yost & Meyers,* for appellant.

*F. J. Hartmann,* for appellee.

Opinion by Keller, P. J., July 10, 1936:

The Act of July 11, 1917, P. L. 817, authorizing appeals to this court in all habeas corpus cases involving the custody of children provides that we "shall consider the testimony and make such order upon the merits of the case, either in affirmance, reversal or modification of the order appealed from, as to right and justice shall belong." This places a heavy responsibility upon us. The duty of deciding which of two persons is to have the custody of the child is especially difficult when the

moral fitness of each of them is conceded, and the court below, for whose judgment we have great respect, is divided in opinion. The governing criterion is, in all cases, the welfare and interest of the child: In re Minor Children of Rosenthal, 103 Pa. Superior Ct. 27, 33, 157 A. 342. We have given this case the careful consideration which it deserves, and our judgment agrees with that of Judge GREER, who wrote the dissenting opinion in the court below. We adopt the following extracts from his opinion: "The decision that a child past eleven years of age, who has been brought up from infancy by his foster father and sisters among wholesome surroundings, with a high degree of parental care and solicitude, should be allowed to remain in such household until he shall have reached the age of discretion in the selection of a future custodian, as against the claim of the natural father, whose only ground for the custody of the child is that he begat him, should in our opinion be resolved unhesitatingly in favor of the foster parent. The touchstone in all such proceedings is the permanent interest of the child. The natural parent primarily has the right to his child's custody. This right, however, is of no avail and yields to the higher right of the child to be given into custody of a foster parent when the behavior of the natural parent has shown, as herein exhibited, indifference, neglect and abandonment of his offspring. A careful reading of the testimony will disclose precisely this state of affairs. On the one hand were foster father and sisters rearing a boy with all the care, solicitude and nurture possible to bestow; concerned for his health, interested to an unusual degree in his education; solicitous for his religious training, and cognizant of the fact that it should be in the church to which his parents adhered. A happy child, secure in the belief that the foster parent was his real one and confident that every opportunity that one of his position in life should receive would be provided him, suddenly is made aware of the

real truth and reacts to his knowledge in a perfectly normal way. The natural parent, as we have said, has nothing to offer for his neglect of and indifference to his offspring throughout all the years, and through no fault of his relatives, has far less to offer as a future home for the child than the one he now enjoys. We do not think it to be required to detail the testimony. It is clear and persuasive in itself, and we are of the opinion supports the claim of the foster parent. Nor do we deem it necessary to cite decisions in favor of our conclusion......
The facts, however, alone in cases of this sort are determinative, and in the present case plead eloquently for the retention of this youth among his present surroundings and against the certain agony of separation from all he has hitherto known and loved......We would......
qualify any order giving to the foster father the right of custody by stipulating that the child should be reared in the faith of its father, and that the father should be given opportunity and be encouraged to visit his child in the expectation of their becoming acquainted and to assist the child when he shall have arrived at the age of discretion to make his own choice. He is now past eleven years of age, and has lived with his foster father for ten of those years......The testimony would indicate that the child is one of at least average, or above the average, in intelligence, and this being the case should be permitted very shortly to have a voice in the determination of his future home. For these reasons we dissent to the decree entered, and would award the custody of the infant to his present foster parent, qualified, as we have said, with the condition that his attendance be required in the church of his natural parent, and that the latter may be given opportunity and encouraged to visit his child at all convenient times, and when the child shall have arrived at the age of discretion, which would be on or [after] his fourteenth birthday, oppor-

tunity be given him to be heard in the vital matter of his future home and training."

It may seem harsh to characterize the behavior of the father in this case as "indifference, neglect and abandonment of his offspring," but the circumstances appear to warrant it. It is true, as stated in the majority opinion of the court below, that the child, when only a year old was taken from his custody and that of his parents and older unmarried sister, by decree of the County Court of Allegheny County, and given to its mother "to be kept by her at the house of her stepfather [James M. Cook, Jr.] and her mother in Johnstown, Pennsylvania, until the further order of this Court"; but that does not excuse or condone his utter failure and neglect to visit, call on or even see the child, or make any effort or attempt to do so for nine or ten years. His mere unsupported statement that he did not do so because he knew or felt he would be unwelcome is not sufficient excuse. Had he tried to see the child and been refused permission, the court, on his application, would have rectified the matter and granted him the right to visit and see his child. But neither he nor his parents and sister, with whom the child under the order appealed from would have to live, made any attempt to see him or visit him for nine or ten years. In the meantime, the child's maternal grandmother died, and his mother left her stepfather's home—and has since died—and Mr. Cook and his two daughters, by his first marriage, took charge of him and lavished upon him the care and affection which his natural father and his relations neglected to give him. The majority opinion in the court below concedes this: "Cook, the respondent, is a man of means, has a very fine home, is a man of excellent character, and has two young daughters, both of whom are of excellent character, very well educated and thoroughly accomplished. The environment in the Cook home is excellent. Both Mr. Cook and

his daughters are devoted to the boy in every way and desire to keep him." The boy has had the best of care, and an overflowing measure of love and affection. He is happy in his surroundings and with his playmates. He lives in an environment with which he is familiar and with friends and associates he has known all his life. To transplant him at this stage of his life, uproot all his associations, cut off his contacts with those who have reared him ever since he can remember anything, deprive him of the friendship of his playmates of his own age and place him in a city apartment among strange people, some of them advanced in age and none of them having any experience or contact with youths of his own age, could not, in our judgment, be for the welfare and best interests of the child. Before such a step is taken his father and his grandparents, with whom it is proposed he shall live, should take some steps to know the child and to win his affection, so that the break in his life will not be so great and so violent. We are satisfied that Mr. Cook will encourage them in their attempts to win the boy's love and affection, and will afford them full opportunity to do so.

We were informed at the argument of this case that the child has already been placed under the instruction of his father's church and has been received into the communion of that denomination.

Each case of this kind must rest on and be determined by its own facts. But that there is no fixed and invariable rule that a parent is entitled to the custody of his or her child, in all circumstances, provided only he or she is of good moral character, we need only cite, inter alia: Com. ex rel. v. Daven, 298 Pa. 416, 148 A. 524; Petition of Sulewski, 113 Pa. Superior Ct. 301, 309, 310, 173 A. 747; Com. v. Hoffman, 91 Pa. Superior Ct. 213; Com. v. Miller, 84 Pa. Superior Ct. 409; Com. ex rel. Trott v. Wilcox, 118 Pa. Superior Ct. 363, 179 A. 808.

The order and decree of the court below is reversed,

and it is ordered, adjudged and decreed that the minor child, Henry Martin Boschert, remain in the custody of his foster grandfather, James M. Cook, Jr. It is further directed that the said foster grandfather shall see that the child attends a church of his father's denomination; and that his father and paternal grandparents are given opportunity and encouraged to visit the child, and allowed to have the child visit them in their home at convenient times. This order is subject to the further order of the court below, in the light of this opinion, when the child attains the age of fourteen.

Costs to be paid by the relator, Martin H. Boschert.