## Commonwealth ex rel. Lotz *v.* Lotz, Appellant.

242

Argued June 12, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Tom P. Monteverde*, with him *Elwyn Jones, Josephine H. Klein*, and *Schnader, Harrison, Segal & Lewis*, for appellant.

*Cletus C. Kilker*, for appellee.

OPINION BY WOODSIDE, J., December 9, 1958:

This is an appeal from the Order of the Court of Common Pleas of Schuylkill County, entered in a custody proceeding on February 10, 1958, and amended March 10, 1958.

The portion of the Order appealed from read: "At the above-stated times, so fixed, the mother, Betty Lotz, shall deliver the child to the father or may permit the child to go to the home of the father alone if the circumstances permit and warrant."

Upon the refusal of the child, Elizabeth Ann Lotz, to visit her father following the order of February 10, the above-quoted portion of the Order was amended as follows: "At the above-stated times, so fixed, the mother, Betty Lotz, shall deliver the child to the father. The father shall return the child to her mother at her home at the conclusion of the several visitation periods." Counsel for the mother, appellant herein, then asked the court whether the amendment meant that "if the child refuses to go that the respondent shall exercise her parental authority to compel her to go by delivering the child at the home", to which the Court replied: "That's correct." The mother contends that the court below was in error in requiring the mother to compel Elizabeth Ann to visit her father. The girl is now thirteen years of age and has been the subject of continual litigation since March of 1948. The conduct of both parties in regard to the various orders for visitation which have been entered throughout the years has been less than admirable.

The last time that the child visited her father was February 23, 1957. During the evening of that visit, a disagreement occurred between them in which it can be determined from the varying stories of the occurrence that the father struck the child and that the child kicked her father and threw newspapers and davenport pillows onto the floor. Thereafter, Elizabeth Ann refused to visit her father at the times ordered for visitation by the court.

The court below properly concluded that "Even though we should accept the child's version of the events of February 23, 1957, it is not of such a serious nature that it should work a permanent estrangement between the child and her father."

The mother contends, however, that the testimony shows that Elizabeth Ann "has a strong fear of appel-

lee and is so emotionally disturbed at the prospect of visiting him that it would be a rash gamble with her future to compel her to make the periodic visits required by Judge CURRAN." The lower court did not so find, and it is in a far better position to evaluate the evidence and judge the parties than we are.

The father's failure to support the child cited by appellant as showing an absence of true parental love was adequately explained by the appellant's refusal of prior offers of support. Even in the absence of such explanation, however, mere failure to support is not grounds for refusing visitation rights.

A thorough review of the record in this case does not reveal sufficient evidence to warrant the termination of appellee's visitation rights. It is against public policy to destroy or limit the relation of parent or child. *Commonwealth ex rel. Manning v. Manning,* 89 Pa. Superior Ct. 301 (1926); *Commonwealth ex rel. Fortunes v. Manos,* 140 Pa. Superior Ct. 352, 13 A. 2d 886 (1940); *Leonard v. Leonard,* 173 Pa. Superior Ct. 424, 98 A. 2d 638 (1953); *Commonwealth ex rel. Timmons v. Timmons,* 161 Pa. Superior Ct. 174, 54 A. 2d 75 (1947).

A parent has seldom been denied the right of visitation. The cases in which visitation rights of a parent have been limited or denied have been those in which severe mental or moral deficiencies of the parent have constituted a real and grave threat to the welfare of the child. See *Commonwealth ex rel. Bachman v. Bradley,* 171 Pa. Superior Ct. 587, 91 A. 2d 379 (1952); *Commonwealth ex rel. Heston v. Heston,* 173 Pa. Superior Ct. 260, 98 A. 2d 477 (1953). The courts have granted visitation rights to parents even in those circumstances where the parent has ignored the children for a long period of time. *Commonwealth ex rel. Brown v. Lane,* 90 Pa. Superior Ct. 350 (1927); *Com-*

*monwealth ex rel. v. Cook*, 122 Pa. Superior Ct. 397, 186 A. 229 (1936); *Commonwealth ex rel. Turner v. Strange*, 179 Pa. Superior Ct. 83, 115 A. 2d 885 (1955). In *Commonwealth ex rel. Turner v. Strange*, supra, both of the children told the court that they did not want to see their mother. This Court, nevertheless, ordered the court below to grant visitation rights.

In *Commonwealth ex rel. Flannery v. Sharp*, 151 Pa. Superior Ct. 612, 30 A. 2d 810 (1943), cited by the appellant, the contest was between the mother of the child who had custody and the paternal grandparents who were denied visitation by this Court. That case was distinguishable from the present case. The contest was not between parents of the child. There was medical testimony that visitation was injurious to the child's health, and there was an abundance of evidence that the condition was caused by irreconcilable differences existing between the parent and grandparents induced primarily by the attitude of the grandparents towards their daughter-in-law. It might also be observed that the child in the *Flannery* case was only seven years old, and, therefore, less able to adjust to family conflicts.

The primary question before us, therefore, is whether the court below was correct in directing the mother to deliver the child to its father for visitation. Although the authority of the court to require one having custody of a child to exercise parental authority over the child to enforce visitation rights was. questioned in *Commonwealth ex rel. Tweedy v. Tweedy*, 74 Pa. Superior Ct. 577 (1920), we feel that the court has such power. If this were not true any child conspiring with the defendant in a custody action could completely nullify the custody order of the court. Hearing judges must take into consideration the feelings of all the parties and weigh carefully the effect

of forcing the children and parents to do what may be justly abhorrent to them, but in the end the court's order cannot be voided solely because a child and parent may join in a stubborn refusal to comply.

In the present case, a reversal of the order of the court below can only lead to a permanent estrangement between Elizabeth Ann Lotz and her father. The court below was in a position to appraise the attitude of the child and to determine the effect of the order upon the girl. It was Judge CURRAN'S conclusion that the best interests of the child would be advanced by effecting a reconciliation with her father. We cannot render the court below powerless to effectuate its decision. Minor children, being wards of the state, may be taken from their parents when their welfare so requires. *Commonwealth ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 92, 66 A. 2d 300 (1949) ; *Commonwealth ex rel. Bachman v. Bradley,* supra, 171 Pa. Superior Ct. 587, 91 A. 2d 379 (1952). Certainly if the court can remove a child from the custody of its parents, it can, for the welfare of the child, conversely order custody or visitation with a parent.

Visitation rights of a parent not in custody have long been a matter of concern to the law of this Commonwealth. They must be carefully guarded for when parents are separated and custody is placed in one of the parents, there exists a danger that the parent having custody of the child may use his or her advantageous position to alienate the other parent from the affections of the child. Were we to reverse the order of the court below, we would provide an easy method for any person who has obtained the custody of a child to nullify the visitation rights granted by the court. A court which has awarded custody of a child can require the person to whom such custody has been

awarded to exert reasonable authority over such child to require it to obey the lawful orders of a court.

The order is affirmed.

———

DISSENTING OPINION BY WRIGHT, J.:

I cannot go along with the majority in ordering this mother to force her thirteen year old daughter to visit her father. The record discloses that the girl refuses to make the visits voluntarily because the father has inflicted serious physical injuries upon her, and she fears and dislikes him. While I fully agree that it is against public policy to destroy or limit the relationship of parent and child, and that a parent should not be denied the right of visitation, the instant order does not provide for visitation of the child by the father. On the contrary, it requires the mother to compel visitation of the father by the child. In the words of Judge (later President Judge) KELLER in *Commonwealth ex rel. v. Tweedy*, 74 Pa. Superior Ct. 577: "We know of no law which justifies the entry of such an order and certainly none under the circumstances of this case".