381 A.2d 1311

**COMMONWEALTH ex rel. Antonio PETERSON**

v.

**Earlene Lassiter HAYES.**

**Appeal of Antonio PETERSON.**

Superior Court of Pennsylvania.

Submitted June 20, 1977.

Decided Dec. 28, 1977.

488

Otis R. Johnson, Philadelphia, for appellant.

Murray B. Dolfman, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

Antonio Peterson and Earlene Lassiter lived together, unmarried, for several years and had two children, Antoinette, born January 29, 1972, and Eric, born July 2, 1974. During the summer of 1975, Antonio and Earlene separated, and in December 1975 Earlene married Thomas Hayes. This is an appeal by Antonio from an order denying him the right to visit his children. We reverse and remand with instructions to the lower court to enter an order granting Antonio the right to visit his children.

–1–

It is established that "it is proper for the courts, in the appropriate circumstances, to grant visitation privileges to a putative father." *Gwiszcz Appeal,* 206 Pa.Super. 397, 399, 213 A.2d 155, 156 (1965). It is, however, not established by what standard the courts are to decide whether the circumstances are "appropriate."

490

■ A parent is rarely denied the right to visit a legitimate child. Visitation has been limited or denied only where the parent has been shown to suffer from severe mental or moral deficiencies that constituted a grave threat to the child. *Commonwealth ex rel. Lotz v. Lotz,* 188 Pa.Super. 241, 245, 146 A.2d 362, 364 (1958); *see Commonwealth ex rel. Heston v. Heston,* 173 Pa.Super. 260, 98 A.2d 477 (1953); *Leonard v. Leonard,* 173 Pa.Super. 424, 98 A.2d 638 (1953). Visitation has been granted parents who have ignored their children for a long period of time, *Commonwealth ex rel. Turner v. Strange,* 179 Pa.Super. 83, 115 A.2d 885 (1955); *Commonwealth ex rel. Boschert v. Cook,* 122 Pa.Super. 397, 186 A. 229 (1936), who have failed to support their children, *Scott v. Scott,* 240 Pa.Super. 65, 368 A.2d 288 (1976); *Commonwealth ex rel. Lotz v. Lotz, supra,* who have engaged in marital misconduct or who have lived with lovers, *Commonwealth ex rel. Sorace v. Sorace,* 236 Pa.Super. 42, 344 A.2d 553 (1975); *Commonwealth ex rel. McNamee v. Jackson,* 183 Pa.Super. 522, 132 A.2d 396 (1957), and even to parents whose children did not want to see them, *Fernald v. Fernald,* 224 Pa.Super. 93, 302 A.2d 470 (1973); *Commonwealth ex rel. Turner v. Strange, supra.*

■ There is no reason why these cases should not be applied when the child is illegitimate. In custody cases, where the petitioner seeks not simply a much more extensive relationship with the child than that sought in visitation cases, but an exclusive relationship, it has been held that the standard to be applied to cases concerning illegitimate children is the same as that applied to cases involving legitimate children. *Commonwealth ex rel. Human v. Hyman,* 164 Pa.Super. 64, 63 A.2d 447 (1949). Any harm that might be said to derive from a relationship between a parent and an illegitimate child must surely be greater in a custody case than in a visitation case. A parent seeking to visit an illegitimate child should therefore have no greater burden of proof than one seeking custody of the child.

■ Indeed, the standard applied to a mother seeking visitation or custody has always been the same, whether or

not she was married at the time of the child's birth, *see, e. g. Commonwealth ex rel. Golembewski v. Stanley*, 205 Pa.Super. 101, 208 A.2d 49 (1965), although of course this fact may be considered in conjunction with all other relevant facts in determining the child's best interest. It is only the father of an illegitimate child who has been relegated to a secondary position. To the extent that this secondary position depends upon the traditional differentiation between the roles of a mother and a father it can no longer be accepted or enforced. A plurality of the Pennsylvania Supreme Court has recently stated that it "question[s] the legitimacy of a doctrine that is predicated upon traditional or stereotypic roles of men and women in a marital union." *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 299, 368 A.2d 635, 640 (1977). Thus the "tender years presumption", which favored an award of custody to a mother rather than to a father, has been eliminated as violating the concept of equality of the sexes as embodied in the Pennsylvania Constitution, art. I, § 28. *See Commonwealth ex rel. Schall v. Schall*, 251 Pa.Super. 262, 380 A.2d 478 (1977); *Commonwealth ex rel. Lee v. Lee*, 248 Pa.Super. 155, 374 A.2d 1365; *McGowan v. McGowan*, 248 Pa.Super. 41, n. 1, 374 A.2d 1306, n. 1.

Similarly, § 411 of the Adoption Act, Act of July 24, 1970, P.L. 620, No. 208, art. IV, § 411, 1 P.S. 411, which provided that in the case of an illegitimate child only the consent of the mother was necessary for adoption, has been held unconstitutional as an invalid distinction between unwed mothers and unwed fathers. *See Adoption of Walker*, 468 Pa. 165, 171, 360 A.2d 603, 606 (1976), where our Supreme Court said: "The only differences between unwed fathers and unwed mothers are those based on sex." *And see Commonwealth ex rel. Scott v. Martin*, 252 Pa.Super. 178, 381 A.2d 173 (1977), where it is said:

True, the child before us is illegitimate. He is, however, just as illegitimate with respect to the mother as he is with respect to the father. The respective claims of the mother and father to custody of the child therefore start out on an equal basis; the father's burden of proof is no

less, but neither is it any more, than the mother's burden, and custody must be awarded solely according to what the preponderance of the evidence shows will be in the child's best interests.

*Id.*, Spaeth, J., joined by Cercone, J., 252 Pa.Super. at 198, 381 A.2d at 183.

In *Stanley v. Illinois,* 405 U.S. 645, 652, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), it was held that the interest of a father in his illegitimate child was "cognizable and substantial." We hold that when, as here, the father asserts that interest by seeking to visit his child, we should decide the case by the same standard we would use if the child were legitimate.[1]

–2–

It follows from the foregoing that the question we should decide is whether it would constitute a grave threat to the children to permit their father to visit them.

"Under both the statutory and case law, the scope of our review in child custody cases is quite broad and, while we cannot nullify the fact-finding function of the hearing judge, we are not bound by a finding which has no competent evidence to support it." *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 235, 312 A.2d 58, 62 (1973), quoting *Commonwealth ex rel. Gifford v. Miller,* 213 Pa.Super. 269, 273–4, 248 A.2d 63, 66 (1968).

██ In his opinion in support of the order denying visitation the hearing judge noted that the mother testified that since she and the father separated, the father has not provided support for the children. Although the father testified that his offer of support was refused, N.T. 20, this conflicting testimony presented a question of credibility, and we must defer to the judge's finding. *Tobias v. Tobias,* 248 Pa.Super. 168, 374 A.2d 1372; *In Interest of Clouse,* 244 Pa.Super. 396, 368 A.2d 780 (1976). However, the failure to

1. This standard assumes that there is no question regarding the fact that the father is the father of the child. If that fact is disputed, as for example if the mother denies that the man seeking to visit the child is the father, the issue of paternity would have to be resolved before the standard could apply.

provide support is not sufficient cause to deny a parent visitation. *See Commonwealth ex rel. Lotz v. Lotz, supra.*

The hearing judge also noted that the mother testified that the father has only visited the children once, and that the only gifts to the children have been two small gifts from the paternal grandparents. However, the judge failed to note the mother's testimony referring to several visits by the father, N.T. 31, and also her reference to a birthday present he gave Antoinette.

The hearing judge found that the father's language was abusive to the mother, and that on one visit, he "tore up the dresser drawer", in front of the children. The mother did testify that on one visit the father had spoken "unfriendly" words to her husband, Mr. Hayes. N.T. 25. However, only Mr. Hayes testified that the father cursed and yelled at his wife, and that once when the father "came by the house and he saw my things upstairs in the bedroom, he just tore the dresser drawer up." N.T. 35. Mr. Hayes did not state that this behavior took place in front of the children. In any case, assuming, as may well be the case, that the father is hostile to the mother and her husband, that is not a sufficient reason to deny the father the right to visit his children. No reason appears why it would not be possible to order that visitation occur outside of the mother's home or presence. *See Gwiszcz Appeal, supra* (visitation away from the mother allowed where mother and father argued frequently and father had struck mother several times). In regard to the "dresser drawer" incident, Mr. Hayes testified that the father "might do it again and if he hit my wife once, he might do it again and if he cusses at her once, he might do it again." N.T. 35. One incident and a fear that it might re-occur do not constitute a grave threat to the children's welfare. Furthermore, it must be remembered that an order granting visitation is temporary in nature. *Commonwealth ex rel. Bailey v. Sumner*, 193 Pa.Super. 79, 163 A.2d 677 (1960). At any time, if it should appear that the father's behavior was abusive towards the mother in such a way as to create a threat to the children's welfare, visitation could be denied.

The most important consideration, for the hearing judge, appears to be that Mr. Hayes wishes to adopt the children. The judge compared Mr. Hayes, whom he found to be "sincere, compassionate and strong" and able to offer the children a stable family life, with the father, who has fathered another illegitimate child and, the judge said, is living in another meretricious relationship. (The father acknowledged that he has another child, N.T. 19; there was no testimony on whether he lives with the child's mother.) The judge concluded that the father's example would provide a "most negative influence" on the children. Lower court opinion at 3.

█ The issue, however, is not whether Mr. Hayes should be allowed to adopt the children, nor whether he or the father could provide a more stable family life for the children. The father does not seek custody but only to visit his children occasionally. When asked why she did not want the father to visit the children, the mother replied:

A: I would like for Mr. Hayes to adopt them.

Q: Is there any special reasons you don't want Mr. Peterson to see them?

A: Not really. Never really did anything for them, really. It was no set amount of money.

N.T. 26–27.

To deny a father the right to visit his children merely because another man wishes to adopt the children would be, in effect, to deny that the father has a "substantial interest" in the children. Mr. Hayes has not yet adopted the children. At the moment, the only issue is whether visitation by the father would be a grave threat to the children's welfare. Since there was no testimony establishing that it would be, the father should be allowed to visit them.

The order of the lower court is reversed and the case remanded with instructions to the lower court to enter an order granting the father the right to visit his children, on conditions consistent with this opinion.

JACOBS and HOFFMAN, JJ., concur in the result.

WATKINS, President Judge, and CERCONE and VAN der VOORT, JJ., dissent.