414 A.2d 375

**Marilyn A. LEWIS, Appellant,**

v.

**Richard E. LEWIS, Jr.**

Superior Court of Pennsylvania.

Argued April 11, 1979.

Filed Nov. 16, 1979.

Marilyn A. Lewis, in pro per.

Peter J. King, Pittsburgh, submitted a brief on behalf of appellee.

Shari F. Shink, Special Child Advocacy Counsel, David O'Hanesian, Chief Counsel, Pittsburgh (Mary Ray White, Spec. Counsel, Stephen J. Harhai, President, Nat. Ass'n. of Counsel for Children, Donald C. Bross, Staff Counsel, Nat. Center for the Prevention and Treatment of Child Abuse and Neglect, Univ. of Colorado Medical Center at Denver, of counsel), for intervenors, Richard E. Lewis, III, and Colleen Lewis, two minor children.

Patricia P. Carlson, Pittsburgh, amici curiae for Lois Hayweiser, Spec. Consultant, Jo Ann Evans-Gardner, Council of Representatives, American Psychological Ass'n.

John F. Bradley, Pittsburgh, amicus curiae for Commission on Rights of Youth (CRY).

Before PRICE, HESTER and MONTGOMERY, JJ.

HESTER, Judge:

This is an appeal from an Order of the Court of Common Pleas of Allegheny County which temporarily suspended the custody rights of appellee-father and directed the appellant-mother and her children to submit themselves to the Child Welfare Services of Allegheny County for counseling in an effort to reestablish the attachment between the appellee-father and his children.

Appellant contests that order and asserts that appellee's partial custody rights should have been permanently suspended. She also asserts that the court abused its discretion in ordering the children and her to undergo counseling and also in failing to have a court reporter for its *in-camera* examination of the children.

Appellant and appellee were married in 1964. This union produced two children, Richard born May 6, 1965 and Colleen born September 21, 1968. The parties separated on September 26, 1975 and a year later a complete divorce was granted.

After the divorce was granted, appellee filed a complaint for partial custody and a petition for reduction of support. After a hearing was held on November 22, 1976, the court reduced the appellee's monthly support obligation and granted appellee partial custody of the children on Sundays from 10 a. m. to 7 p. m. with additional provisions for holidays and vacations.

However, on Thanksgiving day, 1976, the appellant failed to deliver the children to the appellee. Thus, on December 3, 1976, after a petition presented by appellee, a rule was entered on appellant to show cause why she should not be

held in contempt for failure to obey the partial custody order.

After a hearing on December 17, 1976, the court entered the order now appealed from.

Initially, we consider appellants claim that *temporary* revocation of appellee's custody rights was improper. She argues that the weight of the evidence indicates that appellee should be *permanently* prevented from seeing his children.

■ It is beyond dispute that the sole issue to be decided in a custody proceeding between contending parties is the best interests and welfare of the child. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977); *Commonwealth ex rel. Meyers v. Meyers*, 468 Pa. 134, 360 A.2d 587 (1976).

This case, however, is not a "pure" custody battle. It involves only the right of the father to "visit" his children.

■ A parent is rarely denied the right to visit a legitimate child. *Commonwealth ex rel. Peterson v. Hayes*, 252 Pa.Super. 487, 381 A.2d 1311 (1977). Visitation has been limited or denied only where the parent has been shown to suffer from severe mental or moral deficiencies that constitute a grave threat to the child. *Commonwealth ex rel. Lotz v. Lotz*, 188 Pa.Super. 241, 146 A.2d 362 (1958). Visitation has even been allowed to parents whose children do not want to see them. *Fernald v. Fernald*, 224 Pa.Super. 93, 302 A.2d 470 (1973).

Appellant's request, i. e. permanent denial of any visitation rights of appellee, is imposed only in extreme cases. We must review the testimony taken below to determine whether there is any basis for it, remembering, of course, that we are bound by the fact-finding of the hearing judge where competent evidence supports it. *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973).

At the hearing below, appellant, appellee and a psychiatrist, who examined the children, testified.

The appellant (mother) testified that since their separation in September, 1975, the appellee (father) saw the children approximately twice a week. She stated that no problems had occurred until August, 1976. At that time, the appellee visited the house and allegedly broke a window and threatened to burn the house. The children were in the house but did not directly witness whatever occurred. The appellant testified that she told the children of the incident and after that she no longer permitted appellee to visit with the children. (Indeed, she moved and left no address).

However, upon petition, appellee was awarded partial custody rights. The appellant testified that she refused to deliver the children to the appellee on Thanksgiving day because the children were very upset and afraid and did not want to go. She also testified that she told them that if they went to see their father that day they would be handcuffed to a body guard. She testified that they were so afraid she thought they needed reassurance that their safety would be protected.

Appellant also testified to two other incidents between appellee and their son. Appellant stated that in December of 1974, appellee had thrown their son on the floor. Her son had only recently told her of this. In June, 1975 the appellant testified that their son, instead of giving his sister some candy gave it to another child who was sitting on the front steps. Appellee threw the son down on the street. Then when the child did not proceed quickly into the house, appellee kicked him inside the house and continued to hit him in the room.

Appellee testified that the two incidents did not occur at all. He testified that these incidents were nothing more than his disciplining his son. The son had been pushing his sister along as they walked toward the house. Appellee told him to leave her alone. The son pushed her again and appellee grabbed him and they went into the house where he "read the riot act" to the boy. He stated that at no time did he harm him.

He stated that he had no knowledge of the incident allegedly occurring in 1974. That prior to August, 1976, he took his children to softball games and to the park. He also testified that it was he who made arrangements for his daughter's First Communion and that his wife did not attend.

The psychiatrist testified that he examined the boy on November 20, 1976 and the boy appeared very anxious, frightened and depressed because of the trouble between his parents. The doctor saw no way that children could visit with their father alone, now. However, he saw a reasonable expectation that this problem could be resolved. The children had been under great stress for the last several months because of the deteriorating relationship (eventually divorce) between their parents. Once this situation stabilized, he thought the children's problems could be worked out.

At the hearing, the father was allowed to meet the children face to face. When the meeting took place, the children became very frightened and cried loudly. The boy stated that his father was going to throw him out the window of the Courthouse.

The trial judge concluded, and the appellee-father does not dispute, that the visitation rights of the father should be suspended temporarily.

In looking at the testimony we see nothing to support the appellant's assertion that the appellee should be deprived the right of visitation permanently. Both mother and father agree that prior to August, 1976, the father and the children got along well. For whatever reason, after the incident in August, the children were frightened of their father. The mother claims that the father will harm the children if they are forced to visit him. She cites only two other incidents where the father "abused" the children; one occurred one year prior and the other two years prior to the instant problem.

We believe that the trial judge's order was consistent with the situation presented. The evidence did not show

that the father was a hopeless child-beater. The incident that occurred in August clearly was brought on by the marital problems the two were having. We see no reason to finally decide at this time that the father has forfeited all rights to see his children. The psychiatrist testified that he thought that the situation was not insoluble. Isolated incidents will not support the denial of visitation rights. We must be presented with clear and convincing evidence that the parent present is a grave threat to his child. *Commonwealth ex rel. Peterson v. Hayes*, supra. Here, we think that no such picture was painted. We, therefore, dismiss appellants first contention.

Appellant next contends that the court abused its discretion in ordering her and the children to undergo "child-centered parent counseling."

█ Appellant claims this order arbitrarily assumes that *she* was the cause of the rift between appellee and his children. Her contention is that the record clearly shows that appellee caused the break-up by his violent behavior and thus *he* should be the one to undergo counseling.

We believe, however, that appellant's argument is misdirected. Quite clearly, any semblance of a normal relationship between appellant and appellee is gone. Therefore, the only relationship the court could attempt to preserve or remedy was between parent and child. We see his order not as attaching "blame" to the appellant, but merely attempting to resolve the tragic circumstances. Quite possibly the father might require some counseling, however, we are in no position to order such action.

█ Clearly, the lower court had authority and the responsibility to attempt to save any family relationship which existed. See, *Commonwealth ex rel. Ermel v. Ermel*, 259 Pa.Super. 219, 393 A.2d 796 (1978).

Finding nothing wrong with the remedy of the lower court, we dismiss this contention.

Appellant next complains that the court erred in failing to have a transcript taken of its *in-camera* examination of the children.

The court questioned the children in his chambers with both counsel present, but no stenographer. Appellant cites *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976) for the proposition that a custody case must be reversed, where an *in-camera* examination of a child is made and no testimony is recorded.

*Gunter*, however, does not go that far. We noted there, the following:

It is arguable that for the sake of clarity we should announce a prophylactic rule that the failure to transcribe a child's testimony will by itself result in remand; certainly the failure is not to be condoned. So far, however, our cases have only gone to the point of ordering remand where given the failure to transcribe the child's testimony, the record is too incomplete to permit us to discharge our responsibility to exercise "the broadest type" of review. (Citations omitted) id., 240 Pa.Super. at 389, 361 A.2d at 311.

Instantly, we believe that there is no necessity for a remand. We have previously determined that regardless of who's fault underlies the breakup, the trial judge did the proper thing in suspending the father's visitation rights.

We see no purpose to be served in remanding, where both parties agree that the argument action of court was correct (the appellant only disputes the fact that appellee's rights were not *permanently* suspended). Also, almost three years have passed since the original hearing. No purpose would now be served in discovering the circumstances of those events. Custody (i. e. visitation) is an ongoing process. Certainly any hearing now should deal only with current problems. Thus, failing to see any purpose to be served by a remand at this time, we dismiss appellant's contention.

Next presented is an argument asserted by the "Intervenors", in this case, the two children.

■ Basically, intervenor's counsel here seeks to have us declare that children involved in custody cases should be provided with independent counsel (i. e. independent of their

parent's counsel) and the failure to so provide here, denied the children due process of law.

In *Smith v. Smith*, 246 Pa.Super. 607, 371 A.2d 998 (1977), we rejected this same argument, where no compelling reasons had been advanced which would mandate that all children in custody disputes between their natural parents should be provided with counsel.

Intervenors argue that counsel is necessary to protect the child's best interests, since often children in a custody dispute are relegated to the status of "chattels"; another piece of property to be fought over by the parents.

Proceedings under the Juvenile Act, 42 Pa.C.S. § 6301 et seq. require appointment of counsel for the children. There, however, a third party is involved. The child may be adjudicated delinquent or deprived or removed from his natural parents.

Here, there is no inherent adversarial process with regard to the children. Certainly in some cases the bitterness which exists between their parents may result in the children's interest being thrown aside. However, we are hesitant to create a rule which mandates counsel be appointed in *all* custody cases. With counsel appointed in all cases, we see a danger of placing the child in a position adversarial to his natural parents, where no such adversarial atmosphere would be present at the hearing. Most custody cases reflect a genuine parental love for the children.

This is not to say that we disagree with all that has been advanced by the intervenors. Certainly, we agree that in some custody disputes the children do need someone to advance and protect their interests. We think, however, that the trial courts are sufficiently astute to appreciate the situation when it arises and act accordingly. Thus, we will refrain from a ruling which mandates counsel for children in *all* custody cases.

Order of the lower court affirmed.

PRICE, J., files a dissenting statement.

**PRICE, Judge, dissenting:**

I believe that it was error to have an *in camera* examination of the children without a transcript of that examination. Quite obviously this examination formed, in part, a basis for the order entered by the trial judge and we are deprived of the opportunity to fully review the record by this action. I would, therefore, remand for the completion of the record.

In all other respects I join the majority opinion.