419 A.2d 1374

DENA LYNN F.

v.

HARVEY H. F., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 8, 1980.

Filed Nov. 7, 1980.

Joanne Ross Wilder, Pittsburgh, for appellant.

Murray R. Garber, Bradford, for appellee.

Before BROSKY, WATKINS and MONTGOMERY, JJ.

BROSKY, Judge:

This court has recently been confronted with an expedited appeal from an order of court regarding the custody of a male infant, visitation rights of the non–custodial parent, payment of support and the payment of attorney fees. This proceeding has been winding its way through our courts for considerable time. However, the relevant determinations to our responsibility today are few.

The trial court ordered Harvey F. to make payments for the support of his son, commensurate with his son's needs, of one hundred fifty dollars ($150.00) every two weeks. Subsequently, this court granted a partial supersedeas of the lower court's order—which required Harvey F. only to visit his son while in his wife's home—permitting him to have partial custody of his child outside the home of the mother. Appellee concedes that partial custody outside the mother's home should be permitted by final order of this court.

The record amply discloses that since the order at trial court was entered, the housing and financial circumstances of the parties have changed. It is a settled principle of family law that support payments may not be punitive or confiscatory. *Commonwealth ex rel. Roviello v. Roviello*, 229 Pa.Super. 428, 323 A.2d 766 (1974). The facts in this case require that we remand, without prejudice to either

party, this question to the trial court to make a new determination reflecting the changed circumstances as to the financial status of the parties.

■ Next, appellant seeks a resolution of the dispute as to whether counsel fees were appropriately charged him by the court. Pennsylvania appellate courts have held that:

It is the general rule in Pennsylvania that a court is powerless to grant counsel feels in the absence of statutory authorization to the contrary or contractual obligation.

*Drummund v. Drummund*, 414 Pa. 548, 200 A.2d 887 (1964).[1] However, this rule is not analytically clear when we consider a case involving the support or visitation of children. After all, a dispute over support or visitation focuses on the "best interest of the child." The payment of attorney's fees, therefore, can be construed as a necessary arising out of the parent–child relationship and the duty to support. Additionally, policy requires us to encourage litigation which will assure that children are supported. The litigation was clearly for the benefit of the child and was precipitated by the action of the parents—not the child. The court determined the father was to make payments pursuant to his duty to support his son. Therefore, Harvey F. was ordered to pay counsel fees incident to his duty to support, arising out of a proceeding which strove to assure the "best interest of the child." See Clark, Law of Domestic Relations, Section 14.2.

Alternatively, we recognize that this court has been extremely reticent to award attorney's fees absent specific statutory authorization. *Commonwealth v. Scherer*, 182 Pa. Super. 166, 126 A.2d 483 (1956), see also *Linsenberg v. Fairman*, 205 Pa.Super. 136, 208 A.2d 6 (1965). In *Linsenberg*, supra, this court stated:

In *Com. ex rel. Scherer v. Scherer*, 182 Pa.Super. 166, 126 A.2d 483 (1956), an action for a writ of habeas corpus for custody of three children brought by the husband, a

---

1. This standard is far less strict than appellant would have us believe. Appellant contends fees may only be awarded where there is specific statutory authorization. (Appellant's brief, p. 18.)

petition was originated by the wife for a suitable counsel fee of $500. The lower court "in the exercise of its equitable powers" awarded the wife $50 for counsel fees. This Court held this to be error, holding that, in the absence of statutory provision the courts do not have power to direct payment of counsel fees as costs in a case. See *Flood Appeal*, 178 Pa.Super. 75, 113 A.2d 349 (1955). Id., 205 Pa.Super. at 139, 208 A.2d at 8.

While we find the argument in favor of allowing attorney fees to be strong, we hold that the long standing rule—that attorney fees, absent statutory authorization, should not generally be permitted—must hold firm in the instant case.[2] If we were to hold that attorney fees were permissible in support cases, we would be required to establish a test proportioning that payment according to each parent's contribution to support of the child. We are unprepared to venture into the algebra involved in the matrix of support at this time.

Finally, we turn to the primary issue involved in this expedited appeal—whether the trial court erred in restricting Harvey F.'s visitation with his son in the home of his former wife subject to the approval of his former wife. While appellee concedes that partial custody outside appellee's home, as ordered in this court's supersedeas, is satisfactory, appellant contends that the restrictions placed upon him concerning the amount of time appellant may have partial custody of his son, are not warranted by the history of his relationship with his son and are likely to cause him to become a stranger to his son. Essentially, appellant claims current partial custody arrangements are not in "the best interest of his child." [3]

2. There is no statutory provision providing for attorney's fees. Furthermore, even though the duty to support could be construed as contractual in nature, we choose not to do so in this case.

3. Appellant claims that if he is denied more extensive visitation, his relationship with his child will lack the time needed it to be nurtured and grow. (For a discussion of continuity of relationship, generally, see Soldstein, Freud and Solnit, *Beyond the Best Interest of the Child*, The Free Press 1973, Chapter 3. For an extensive review see

■ The scope of review to be applied in this case is very broad. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977). Although we are still tied to the facts as found in the court below, as we are to the lower court's determinations about credibility of witnesses and weight given their testimony, *Commonwealth ex rel. Harry v. Eastridge*, 374 Pa. 172, 177, 97 A.2d 350, 353 (1953), ". . . [w]e are not bound, on appeal by deductions or inferences made by the lower court; *Commonwealth ex rel. Gifford v. Miller*, 213 Pa.Super. 269, 248 A.2d 63 (1968), . . ." *Commonwealth ex rel. Cutler v. Cutler*, 246 Pa.Super. 82, 88, 369 A.2d 821, 823 (1977). It is also well settled that our sole function in making our review is to assure the "best interest of the child" is served. *Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 360 A.2d 587 (1976). And finally, of particular relevancy in a case which is so steeped in emotion as this, we must inquire only into relevant facts as they affect the relationship between parent and child—not parent and parent or parent and stranger to that intimate relationship. See *In Re Leskovich*, 253 Pa.Super. 349, 385 A.2d 373 (1978).

Visitation by the non–custodial parent has been severely limited or denied in few cases. As we stated in *Scarlett v. Scarlett*, 257 Pa.Super. 468, 472, 390 A.2d 1331, 1333–1334, (1978):

> Visitation . . . has been limited or denied only where a parent has been shown to suffer from severe mental or moral deficiencies that constituted a grave threat to the child. *Commonwealth ex rel. Peterson v. Hayes*, 252 Pa.Super. 487, 381 A.2d 1311 (1977). *Commonwealth ex*

Gouch, *An Essay on the Critical and Judicial Reception or Beyond the Best Interest of the Child*, 13 F.Law Qu. 49, see generally, McCarthy and Carr, *Juvenile Law and Its Processes: Cases and Materials*, The Bobbs–Merrill Company, 1980.

While we recognize that chapter focuses on the continuity of relationship between custodial parent and child, we believe those same principles are applicable to the non–custodial parent and child. One must remember that once a child has developed a bond with either parent, the total removal of one parent from his life will psychologically scar the child.

*rel. Lotz v. Lotz,* 188 Pa.Super. 241, 146 A.2d 362 (1958). *See also, Commonwealth ex rel. Heston v. Heston,* 173 Pa.Super. 260, 98 A.2d 477 (1953); *Leonard v. Leonard,* 173 Pa.Super. 424, 98 A.2d 638 (1953). "Visitation has been granted parents who have ignored their children for a long period of time, *Commonwealth ex rel. Turner v. Strange,* 179 Pa.Super. 83, 115 A.2d 885 (1955); *Commonwealth ex rel. Boschert v. Cook,* 122 Pa.Super. 397, 186 A. 229 (1936), who have failed to support their children, *Scott v. Scott,* 240 Pa.Super. 65, 368 A.2d 288 (1976); *Commonwealth ex rel. Lotz v. Lotz,* supra, who have engaged in marital misconduct or who have lived with lovers, *Commonwealth ex rel. Sorace v. Sorace,* 236 Pa.Super. 42, 344 A.2d 553 (1975); *Commonwealth ex rel. McNamee v. Jackson,* 183 Pa.Super. 522, 132 A.2d 396 (1957), and even to parents whose children did not want to see them, *Fernald v. Fernald,* 224 Pa.Super. 93, 302 A.2d 470 (1973); *Commonwealth ex rel. Turner v. Strange,* supra." *Commonwealth ex rel. Peterson v. Hayes,* supra, 252 Pa.Super. at 490, 381 A.2d at 1313.

■ Visitation or partial custody may be withdrawn by the court anytime should it have an adverse effect on the child's welfare, as stated in *Commonwealth v. Rozanski,* 206 Pa.Super. 397, 213 A.2d 155 (1965), where this court allowed visitation by a father even though he had frequently argued and sometimes physically struck the child's mother. Whether or not to grant visitation under circumstances where the parents' relationship has been violent always presents a question of the degree and type of violence and its effect upon the child.

■ In the instant case, there is no evidence in the record indicating the relationship between the father and son is poor. Furthermore, any evidence of the father's violent interludes present no proof that it was directed at his child. It is only logical for us to decide that the appellant should, under these circumstances, be permitted to continue to have partial custody of his child. However, it would not be sensible for us to permit only visitation—limited to the

mother's home—as provided in the trial court's order. After all, should the parents argue or fight, the child is more likely to be physically harmed or his relationship with either parent damaged if he is in close proximity to their provocative interaction.

Unfortunately, the physical distance between father and child is so great that their relationship cannot prosper outside the mother's home, other than at local restaurants or parks, because the length of visitation is so short that the father cannot take the child to his own home.

Although we would normally remand to resolve the terms and conditions of partial custody, there is adequate information on the record for this court to establish such a schedule for granting partial custody to the father.

We, therefore, direct that the appellant be granted partial custody of his minor son each alternate weekend from Saturday, 12 noon to Sunday 6 p. m., beginning with the weekend immediately following the date of this order.

The father is to pick up the child at the residence of the mother and return the child to the same location. The mother is to have the child ready to give to the father and at the exchange no other adult persons are to be present.

In the event the child suffers from an illness or some other extraordinary event requiring the child's presence, the mother is to notify the father by 12 noon Friday, 24 hours in advance of the father's scheduled arrival, of the child's condition or circumstances. If the child becomes thus unavailable, the father shall have partial custody the subsequent weekend on the same terms and shall resume partial custody pursuant to this order. That is to say, he may have partial custody on all those weekends he would have had, had the child not become unavailable. In addition, we remand to the trial court the determination as to amount of support payments to be made by appellant in light of present circumstances.

Judgment reversed and case remanded to the trial court for proceedings consistent with this opinion.