429 A.2d 1197

### In re: the Matter of LISA AND CYNTHIA, Juveniles.

### Appeal of ANNA B.

Superior Court of Pennsylvania.

Argued June 9, 1980.

Filed May 15, 1981.

---

Jeffrey Gilbert, Allentown, for appellant.

James T. Huber, Allentown, did not file a brief on behalf of Guardian, participating party.

Malcolm J. Gross, Allentown, for Children's Bureau, participating party.

Before BROSKY, HOFFMAN and CIRILLO,* JJ.

PER CURIAM:

Appellant-mother contends that the lower court erred in denying her petition for visitation with her two daughters. We are unable, however, to address the merits of her appeal

---

\* Judge Vincent A. Cirillo of the Court of Common Pleas of Montgomery County, Pennsylvania, is sitting by designation.

and, instead, remand for further proceedings consistent with this opinion.

The subjects of these proceedings are Lisa, born November 29, 1970, and Cynthia, born October 23, 1974, who have been under the care of the Lehigh County Office of Children and Youth Services (CYS) since August, 1975, pursuant to a voluntary agreement of appellant and her then husband.[1] On October 6, 1975, the children were adjudicated deprived and custody was awarded to CYS. The children were then placed in separate foster homes, but have been together in the same foster home since approximately December, 1977. CYS permitted the parents monthly, one-hour, supervised visits, a privilege which they exercised sporadically. Subsequently, neither parent visited the children for a period of approximately six months. In May, 1977, appellant resumed a pattern of irregular visitation which she attributed to her marital problems, her husband's incarceration, and his eventual release. In January, 1978, CYS caseworker Francis Slonaker scheduled visits at six-week intervals. Appellant visited the children, according to schedule, in January, March, May, and June, 1978. Following each of those visits, the foster mother reported to Mr. Slonaker incidents of the children's misbehavior which she believed was related to appellant's visits.[2] Mr. Slonaker agreed, and unilaterally terminated appellant's visitation effective August 4, 1978.[3]

1. Appellant and her husband were divorced on November 29, 1979. Appellant's former husband is not a party to the instant proceedings. Consequently, appellant's petition seeks resumption of only her visitation rights.

2. For example, following the January visit, Lisa appeared to be insecure, refusing to talk to the foster parents, crying, and having nightmares. Additionally, she experienced a decline in her schoolwork. Cynthia pulled down some curtains and fell into a sink. After the May visit, Lisa demonstrated aggressive behavior, stabbing a child with a fork. The most severe misbehavior followed the June visit: both children engaged in fights and urinated on the carpets. Additionally, Lisa disobeyed a curfew established by the foster family, and, when punished, smashed a hole in the wall with one of her toys.

3. At about that time as well, CYS commenced an action in the Orphans' Court Division of the Lehigh County court to involuntarily

Following an unsuccessful attempt at informal resolution of the visitation matter, appellant filed a petition for visitation with the Juvenile Division of the Lehigh County Court of Common Pleas on January 8, 1979. The court conducted a hearing on March 23, 1979, at which appellant testified about her prior visitations, her desire to resume visitation, and the failure of CYS to explain the problems which the children were having and which caused her visitation rights to be suspended. The foster mother testified that prior to the January, 1978 visit, the children had developed a close relationship to the foster family, adopting its surname as their own. She testified also that she had discussed the prospect of adopting the children with Lisa and Mr. Slonaker. Additionally, she described the instances of the children's misconduct which had increased in severity and duration following each of appellant's visits. The foster mother testified also that following the suspension of visitation, the children's behavior stabilized. Mr. Slonaker testified that he had monitored appellant's visits and considered the foster mother's reports. He stated that the children had made excellent progress in their current foster placement until the recent disruptions following appellant's visits. Mr. Slonaker testified that he had heard appellant tell Lisa that her father was a bad man whom she should dislike, and stated his belief that appellant made other inappropriate remarks to the children.[4] Mr. Slonaker admitted on cross-examination, however, that at about the time of the children's alleged reactions to their mother's visits he had informed Lisa of her father's incarceration. Additionally, he corrobo-

terminate appellant's parental rights. That action has not yet been resolved.

4. Appellant refuted that suggestion, stating that she had merely told Lisa that she should not hate her father, despite his conviction and imprisonment. Additionally, appellant denied making any other allegedly inappropriate remarks to the children.

rated the foster mother's testimony that Lisa had been consulted regarding the possibility of adoption. Mr. Slonaker admitted on cross-examination that these factors could have prompted the children's incidents of misbehavior. The lower court also heard from Dr. Ellen Herrenkohl, a clinical psychologist who had discussed the case with the caseworker and foster mother and had examined the children. Dr. Herrenkohl testified that she had first seen Lisa several years earlier when Lisa was initially placed in foster care, and that she had next seen Lisa in December, 1978. Based upon her interviews and several tests, Dr. Herrenkohl concluded that Lisa suffered guilt feelings regarding her father's incarceration and insecurity concerning the permanence of her foster placement. Dr. Herrenkohl saw Cynthia, the younger child, only once, in February, 1979. Based upon the information available to her, Dr. Herrenkohl concluded that Cynthia was an insecure, hyperkinetic child. Although she had not interviewed appellant and had no information regarding the children's feelings for appellant, Dr. Herrenkohl opined that appellant should not be allowed to visit the children pending the outcome of the involuntary termination proceedings. Following the hearing, the lower court appointed a guardian *ad litem* who reviewed the transcript of the hearing, spoke to the witnesses and the children, and recommended to the court that visitation be suspended pending the resolution of the involuntary termination proceedings. On August 15, 1979, the lower court denied appellant's petition for visitation. This appeal followed.

■ A parent is rarely denied the opportunity to visit with his or her child even if he or she delays in asserting that right. *See Commonwealth ex rel. Peterson v. Hayes*, 252 Pa.Super. 487, 488–489, 381 A.2d 1311, 1312 (1977) (plurality opinion); *Spells v. Spells*, 250 Pa.Super. 168, 174, 378 A.2d 879, 883 (1977); *Fernald v. Fernald*, 224 Pa.Super. 93, 94, 302 A.2d 470, 471 (1973); *Commonwealth ex rel. Lotz v. Lotz*, 188 Pa.Super. 241, 244, 146 A.2d 362, 363 (1958). "Thus, it is

clear that visitation rights of a parent not in custody must be carefully guarded. Further, it is against public policy to limit or destroy the relationship of parent to child." *Spells v. Spells, supra,* 250 Pa.Super. at 174, 378 A.2d at 883 (citations omitted). Visitation may be denied or limited only when there are severe mental or moral deficiencies of the parent which are shown to be gravely detrimental to the welfare of the child. *See Commonwealth ex rel. Sorace v. Sorace,* 236 Pa.Super. 42, 44, 344 A.2d 553, 553 (1975). *See also Commonwealth ex rel. Peterson v. Hayes, supra,* 252 Pa.Super. at 488–489, 381 A.2d at 1312 (collecting cases in which visitation was not denied); *In the Interest of LaRue,* 244 Pa.Super. 218, 220, 366 A.2d 1271, 1272 (1976) (plurality opinion); *Scott v. Scott,* 240 Pa.Super. 65, 70, 368 A.2d 288, 291 (1976) (Spaeth, J., concurring); A Momjian & N. Perlberger, *Pennsylvania Family Law,* § 5.5.2 (1978). *Cf. Commonwealth ex rel. Zaffarano v. Genaro,* 286 Pa.Super. 436, 429 A.2d 17 (1981) (unless there be some compelling reason, a grandchild should not be denied the visitation of his grandparents).

"In cases of child custody and visitation our scope of review is broad and requires independent examination of the evidence before reaching our conclusion." *Spells v. Spells, supra,* 250 Pa.Super. at 174, 378 A.2d at 883. In custody cases, our court has underscored the necessity of a complete record in exercising its broad powers of review.

In conducting this review, the appellate court will look to whether all pertinent facts and circumstances of the contesting parties have been fully developed. . . . It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself. . . . After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and conclusions. . . . Only with the benefit of a full record and full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review. . . . Where

the record is incomplete or the opinion of the lower court is inadequate, the case will be remanded.

*Lewis v. Lewis,* 267 Pa.Super. 235, 238–242, 406 A.2d 781, 783–84 (1979) (citations omitted). *See also Commonwealth ex rel. Leighann A. v. Leon A.,* 280 Pa.Super. 249, 252, 421 A.2d 706, 708 (1980). Our need for a complete record and a thorough opinion is equally acute when the issue is visitation. In *Commonwealth ex rel. Stoyko v. Stoyko,* 267 Pa.Super. 24, 25, 405 A.2d 1284, 1285 (1979), this Court reversed and remanded an order denying a mother visitation, directing the lower court to determine, on remand, the causal connection between the child's behavior and his relationship with his mother and to prepare a comprehensive opinion reflecting an analysis of the record and specifying the reasons for its ultimate decision.

■ Our ability to review the order in the present case is hampered by deficiencies in the record. There is no evidence of "severe mental or moral deficiencies [on the part of appellant] that constitute a grave threat to the child[ren]." *Scarlett v. Scarlett,* 257 Pa.Super. 468, 470, 390 A.2d 1331, 1333 (1978). Regarding appellant's alleged improper comments to the children, the contradictory testimony of appellant and Mr. Slonaker balanced against the controlled atmosphere of the visits does not establish the grave threat to the welfare of the children required to deprive appellant of visitation. *See Leonard v. Leonard,* 173 Pa.Super. 424, 427, 98 A.2d 638, 639 (1953). More importantly, however, we believe that the alleged causal relation between the visits and the reactions has not been adequately developed on the present record. In particular, Mr. Slonaker and the foster mother admitted that they had discussed with Lisa matters which may have prompted the children's reactions. Similarly, the foster mother testified that Lisa's destruction of property followed punishment for her violation of the foster family's curfew. Moreover, Dr. Herrenkohl's testimony does not supply the causal connection. In this regard, we note that her interviews of the children occurred several months

after the inception of their misconduct. She did not consult appellant, nor did she consider the children's feelings for appellant. Moreover, Dr. Herrenkohl did not consider the impact of a prolonged suspension of visitation upon the parent-child relationship, nor the effect of a resumption of visitation followed by the termination of appellant's parental rights.[5] "Accordingly, it will be necessary on remand for the lower court to address itself to all relevant facts as they exist at the time of the supplemental proceedings which must be held." *Commonwealth ex rel. Leighann A. v. Leon A., supra,* 280 Pa.Super. at 255, 421 A.2d at 709. *See also Commonwealth ex rel. Stoyko v. Stoyko, supra.*

Because of the deficiencies in the record, we must remand this case for further proceedings. On remand the lower court shall allow introduction of any additional evidence pertinent to the issue of visitation, including, but not limited to, the alleged causal relationship between appellant's visits and the children's reactions. Moreover, the court shall allow the parties to update the evidence to reflect any circumstances relating to the best interests of the children and the grave threat justifying a denial of appellant's visitation, both of which may have changed during the intervening months since the lower court last heard evidence in this matter. Finally, the lower court shall file a comprehensive opinion which thoroughly analyzes the evidence and states the reasons for its ultimate decision.

Order vacated and case remanded for proceedings consistent with this opinion. Any party aggrieved by the lower court's ultimate order may then take a new appeal to this Court, as allowed by law.

5. From our review of the record, it is clear that considerable emphasis was placed upon the pending involuntary termination proceedings which could have rendered appellant's petition for visitation moot. We, too, are mindful of that fact; however, we emphasize that the only issue raised by appellant's petition is whether it would constitute a grave threat to the children to permit appellant to visit them. *See Commonwealth ex rel. Peterson v. Hayes, supra* 252 Pa.Super. at 492, 381 A.2d at 1314–15.