J-A14022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.K.M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| B.R.M. | |
| Appellant | No. 57 MDA 2016 |

Appeal from the Order Entered December 9, 2015
In the Court of Common Pleas of Centre County
Civil Division at No(s): 2014-4145

BEFORE:  BOWES, J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 25, 2016**

B.R.M. (Father) appeals from the December 9, 2015 custody order that granted legal and physical custody to S.K.M. (Mother) with respect to the parties' son, J.B.M., born in June of 2000.  We vacate, in part, and remand in accordance with the following memorandum.

Father and Mother are the natural parents of J.B.M., who is the subject of this appeal, and his older brother, J.R.M., born in March of 1998.  On July 2, 2014, the parties separated, and Mother moved out of the marital home with both sons.  N.T., 12/9/15, at 5.  Mother filed a complaint in divorce on October 24, 2014, which included a custody count requesting primary physical custody of their sons.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On January 23, 2015, Father filed a petition for custody, wherein he requested shared legal custody of their sons and shared physical custody of J.B.M. With respect to his older son, Father asserted that J.R.M. does not wish to spend time with him, and that Father "will abide by [J.R.M.]'s wishes." Petition, 1/23/15, at ¶ 5.

On February 25, 2015, the trial court issued a temporary order granting Father and Mother shared legal custody and Mother primary physical custody of their sons. In addition, the order granted Father partial physical custody of J.B.M. on alternating weekends and one evening per week for three hours.[1]

Father filed a petition for contempt on March 18, 2015, wherein he asserted that J.B.M. has not visited him since the issuance of the temporary order, and that Mother "does not encourage [J.B.M.] to do so but rather goes along [with] the child's wishes." Petition, 3/18/15, at ¶ 8. Upon Father's request, by order dated April 13, 2015, Father's petition for contempt was withdrawn. Further, by separate order on the same date, the trial court suspended the February 25, 2015 temporary order.

Following a praecipe for hearing filed by Father, the court scheduled a custody trial, which occurred on December 4 and 9, 2015. Father and

---

[1] Father states in his brief that the temporary order was issued following a custody conference. Father's brief at 7.

Mother testified. In addition, the court conducted *in camera* examinations of the parties' sons in the presence of counsel.

Father testified on direct examination that, immediately after the separation in July of 2014, he and J.B.M. visited sporadically. N.T., 12/4/15, at 5. From September of 2014, until December of 2014, J.B.M. visited him every Saturday. **Id.** Father testified that J.B.M.'s "last visit in December coincided with the letter that [Father's counsel] sent out as far as letting [Mother's] attorney know that we would be seeking custody." **Id.** at 6. Father testified that he requested to participate in counseling with J.B.M.,[2] "but what I was told was that Dr. Hemmelstein had talked to [J.B.M.] and that [J.B.M.] was not interested. . . ."[3] **Id.** at 24. With respect to his physical custody request, Father testified that he has "only seen [J.B.M.] 80 hours about [ ] in a year and a half. I'll take what I can get." **Id.** at 38.

Mother testified that she has encouraged a relationship between Father and their sons. N.T., 12/9/15, at 31-40. She did not testify regarding her physical custody request, other than to suggest that she and Father participate in counseling, "to discuss techniques as far as how to

---

[2] Father did not testify with respect to when or to whom he made this request.

[3] Mother implied in her testimony that J.B.M. met with Dr. Hemmelstein on one occasion, in May of 2015. N.T., 12/9/15, at 68-69. Father testified that J.B.M. participated in counseling with a different provider from the date of separation until Christmas of 2014. N.T., 12/4/15, at 11.

move forward in this difficult time [with their sons]."[4] *Id.* at 52. Mother's counsel introduced an e-mail from Father dated November 22, 2015, shortly before the subject proceedings, wherein he rejected her suggestion, set forth in an e-mail she sent to him on the previous day, for co-parenting counseling. Father stated, in part, "[i]t is clear that the counseling is becoming another of your many conditions that you are putting in place in order for me to see my kids." *Id.* at 40; *see also* Mother's Exhibit Q.

By order dated December 9, 2015, and entered on December 10, 2015, the court granted Mother "legal and physical custody" of J.B.M. and J.R.M. Order, 12/9/15, at 1 (unpaginated). Importantly, the order stated, "[t]he parties had agreed prior to hearing that actual custody of [J.R.M.] was not an issue and it was primarily [J.B.M.]." *Id.* With respect to its physical custody award involving J.B.M., the court stated:

> The [c]ourt is satisfied that a previous [o]rder saying that the child [J.B.M.] would see his Father has not been successful and the [c]ourt is satisfied that an order that [J.B.M.] has to see his Father at any given time to be counterproductive. The [c]ourt is satisfied it cannot cure the ills that have arisen over six to eight years in a four-hour hearing or bright line order. The [c]ourt declines to do so. The [c]ourt would hope that the Father and [J.B.M.], over time, will be able to see things from each other's perspective and perhaps have a good relationship, if not now, hopefully in the future.

Order, 12/9/15, at 3 (unpaginated).

---

[4] Mother requested sole legal custody during the hearing. N.T., 12/9/15, at 17.

Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on January 18, 2016.

Father raises the following issues for our review:

I. Did the trial court abuse its discretion in finding that the best interests of [J.B.M.] dictated that Father not be awarded any time with his son?

    A. Was there any evidence to establish that time between Father and son would be detrimental to the child's best interests?

    B. Was the fact that the child did not comply with the prior order a sufficient reason to deny Father any time with son?

    C. Did the court's order estrange Father and son?

    D. Was there any evidence to establish that Father is a grave threat to his son?

II. Did the trial court abuse its discretion in including in the custody order directives with respect to a 529 account and custodial account?[5]

Father's brief at 6.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to

---

[5] In his statement of questions involved, Father states that, "[t]his issue was raised in the Concise Statement of Matters Complained of on Appeal, but is being withdrawn." Father's brief at 6. Therefore, we do not consider this issue.

the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**V.B. v. J.E.B.**, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." **S.W.D. v. S.A.R.**, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

Section 5328(a) of the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340, enumerates the factors that a court must consider in determining the best interests of a child. It provides as follows.

### § 5328. Factors to consider when awarding custody.

    **(a)** *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

        (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

        (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and

which party can better provide adequate physical safeguards and supervision of the child.

   (2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

   (3) The parental duties performed by each party on behalf of the child.

   (4) The need for stability and continuity in the child's education, family life and community life.

   (5) The availability of extended family.

   (6) The child's sibling relationships.

   (7) The well-reasoned preference of the child, based on the child's maturity and judgment.

   (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

   (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

   (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

   (11) The proximity of the residences of the parties.

   (12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

   (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Section 5323(a) provides, in relevant part:

**5323. Award of Custody.**

**(a)** *Types of award.* — After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

**(1)** Shared physical custody.

**(2)** Primary physical custody.

**(3)** Partial physical custody.

**(4)** Sole physical custody.

**(5)** Supervised physical custody.

**(6)** Shared legal custody.

**(7)** Sole legal custody.

23 Pa.C.S.A. § 5323(a). The Act defines the types of custody awards, in relevant part:

**§ 5322. Definitions.**

. . .

*"Partial physical custody."* . —The right to assume physical custody of the child for less than a majority of the time.

*"Physical custody."* . —The actual physical possession and control of a child.

*"Primary physical custody."* . —The right to assume physical custody of the child for the majority of time.

. . .

*"Shared physical custody."* . —The right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child.

*"Sole legal custody."* . —The right of one individual to exclusive legal custody of the child.

*"Sole physical custody."* . —The right of one individual to exclusive physical custody of the child.

. . .

23 Pa.C.S.A. § 5322(a).

Instantly, the subject order granted sole legal and sole physical custody to Mother. In the order, the court considered the Section 5328(a) custody factors and delineated the reasons for its decision, set forth above. In its Rule 1925(a) opinion, the court reiterated its findings with respect to the statutory factors. **See** Trial Court Opinion, 1/18/16. Specifically, the court found that Section 5328(a)(1) and (4) weighed heavily in Mother's favor. In addition, the court weighed Section 5328(a)(3), (9), and (10) in Mother's favor. The court did not weigh any of the factors in Father's favor.

Nonetheless, Father argues that the court failed to consider the best interests of J.B.M. in determining its physical custody award.[6] Father asserts that the court, "[m]erely allow[ed] [J.B.M.] to control the situation by deciding if and when he will visit with [F]ather[,] [and that this] amounts to a side-stepping of the [c]ourt's responsibility as it relates to [c]ustody decisions." Father's brief at 21. For the reasons that follow, we agree.[7]

J.B.M. was fifteen years old and in tenth grade at the time of his *in camera* testimony. On cross-examination by Father's counsel, J.B.M. acknowledged that from the time his parents separated in July of 2014, until December of 2014, he visited Father at the marital home on weekends, not including overnights. N.T., 12/4/15, Part 2, at 25-26.[8] He testified as follows:

> Q. And the reason you stopped going over, I think, is because I filed for a custody hearing, isn't that correct? And you felt like we were trying to force you to then come over?
>
> A. I also think that was after the whole car thing, whenever we went back to the house.[9]

---

[6] Father does not assert an abuse of discretion by the court in its legal custody award. Therefore, we do not consider it.

[7] Based on this disposition, we do not address Father's additional claims set forth in his brief.

[8] The *in camera* testimony of J.B.M. and his brother is included in a separate transcript dated December 4, 2015.

[9] J.B.M. was referring to an incident where he and Mother went to the marital home to retrieve personal property. He testified that, as they were

*(Footnote Continued Next Page)*

*Id.* at 26.

With respect to why he did not visit Father pursuant to the temporary custody order, J.B.M. testified on inquiry by the trial court, "[i]t's just like [Father] hasn't been very easy-going with any of the stuff that we have needed." *Id.* at 5. For instance, J.B.M. explained that Father did not promptly "sign[] off on [J.R.M.]'s classes" and on selling the van that was marital property. *Id.* at 5-6. He concluded, "[a]nd so it's like just repeated dragging his feet has shown -- like [Father] hasn't changed that much from whenever we were at the marital home, and that wasn't pleasant at all[.] . . ." *Id.* at 6.

J.B.M. testified regarding his custody preference, "I just don't feel like I'm ready to start visiting [Father] again, so I'd prefer it to be like my choice to see whenever I visit him." *Id.* at 4. On cross-examination by Mother's counsel, J.B.M. testified he would feel ready to see Father when he sees "a change." *Id.* at 13. He continued:

Q. What is it that you think your dad needs to change?

A. [J]ust he hasn't been very cooperative with anything.

. . .

*(Footnote Continued)* ───────────────

backing out of the garage in their car, Father "attempted to close the garage door to keep us there for some reason, and then, as we backed out, he flipped off my mom, big old bird." N.T., 12/4/15, Part 2, at 19.

[A]nd with this whole custody thing, hearing thing, it's just like he's trying to almost like force me to go see him.

Q. And you don't like that?

A. No.

. . .

Q. [I]s your dad mean to you?

A. I wouldn't say mean to me, specifically. It's just that he -- like you kind of had to walk on eggshells, because . . . he would just get really irritated over the simplest and stupidest of stuff.

Q. And when he was irritated, what would happen?

A. A lot of yelling.

Q. And was that at you?

A. No, not really.

Q. Who was it at?

A. [J.R.M.] and mom, usually.

. . .

And then we'd have like a big four-hour lecture. . . .

Q. How often would that occur?

A. Probably at least once a month.

. . .

It was like a cycle, basically.

. . .

He would get angry, then he would have the big lecture, and then he would have that like maybe two-week period of calm,

walking on eggshells kind of thing, and then he would get angry again and then just keep kept going and going.

*Id.* at 14-16.  Significantly, J.B.M. testified:

Q. [H]ave you had a chance to talk to your dad about his behavior?

A. No, not really.

*Id.* at 16.   However, on cross-examination by Mother's counsel, J.B.M.

testified:

Q. Would you be willing to return [to counseling] and maybe work with your dad in that context, a therapeutic context?

A. Preferably not.

. . .

I just don't like counselors . . . because it's just a stranger and he expects you to like throw out your heart to a stranger who is supposed to help you.

Q. Would you agree that you and your dad might need some help to try and get back on track?

A. I mean, I guess I prefer there not to be counseling[.] . . .

Q. So who might you suggest?

. . .

Is there somebody that you know that might be willing to get involved and help?

A. I mean, I suppose maybe a youth minister.

*Id.* at 21-23.

Upon careful review, we are constrained to agree with Father that the

trial court abused its discretion in fashioning its physical custody award.  By

concluding that an order granting Father partial physical custody would be "counterproductive" and not "cure the ills" that have arisen between Father and J.B.M., the court failed to consider J.B.M.'s best interests, contrary to the Act and to established case law.

This Court has long held that, in child custody disputes, a trial court "ha[s] authority and the responsibility to attempt to save any family relationship which existed." *Lewis v. Lewis*, 414 A.2d 375, 378 (Pa. Super. 1979) (citing *Commonwealth ex rel. Ermel v. Ermel*, 393 A.2d 796 (Pa. Super. 1978). To the extent the court inferred in its order that it would be in J.B.M.'s best interest to have "a good relationship" with Father, it accepted no responsibility to attempt to save what existed of the parent-child relationship and/or to foster it. *See* Order, 12/9/15, at 3 (unpaginated) ("The [c]ourt would hope that the Father and [J.B.M.], over time, will be able to see things from each other's perspective and perhaps have a good relationship, if not now, hopefully in the future"). We hold that this was an abuse of discretion.

Indeed, the record establishes that J.B.M. willingly visited Father every Saturday for three months following the parties' separation, from September until the end of December of 2014. Father's counsel introduced e-mails and/or text messages to Father from Mother indicating that J.B.M. "had a good time" during the visits. N.T., 12/4/15, at Father's Exhibit 1. As of December 12, 2014, Mother e-mailed Father and informed him that J.B.M.

"would like to set up a routine schedule where every other weekend he is spending all day with you – a [12:00] noon - 8 p.m.ish situation. Then every other weekend, like this one, he would like a shorter visit such as a dinner *or a movie*." ***Id.*** (emphasis in original). Significantly, by the end of December 2014, the record demonstrates that J.B.M. decided not to visit Father any longer after learning that Father planned to file a petition for custody, observing the incident in the garage between Father and Mother, discussed above, and his additional knowledge of disputes between the parties that had occurred. N.T., 12/4/15, Part 2, at 5-6, 26.

Thereafter, besides seeing Father in January of 2015 to open Christmas gifts, J.B.M. testified that the only other time he visited with Father was on Memorial Day of 2015, when he and his brother went to an IHOP restaurant with Father and then to the Penn State Arboretum. ***Id.*** at 26-28. J.B.M. implied in his testimony that no problem occurred during the most recent visit with Father other than "it just felt like we were tense, though, and awkward." ***Id.*** J.B.M. testified that Father continues to text him, and that he texts Father back, "if I remember." ***Id.*** Importantly, Father testified that J.B.M. answers telephone calls from him when he is sick. N.T., 12/4/15, at 22. J.B.M.'s testimony was consistent with that of Father because he stated that his last telephone conversation with Father was "[t]he last time I was sick at home, which -- maybe a month and a half ago." N.T., 12/4/15, Part 2, at 20.

Thus, the evidence demonstrates that, at the time of the parties' separation in 2014, a relationship existed between J.B.M. and Father, and that they spent time together on a weekly basis for at least three months following the separation. The evidence further demonstrates that J.B.M. developed increased negative feelings toward Father as the separation and divorce matters between his parents progressed, causing him to cease all physical contact with Father. We hold that the court abused its discretion by not considering whether the lack of contact between Father and son is contrary to J.B.M.'s best interest.

Accordingly, we vacate the custody order insofar as it awards sole physical custody of J.B.M. to Mother. We remand this matter to the trial court to consider the best interests of J.B.M. with respect to the physical custody award. In so doing, the trial court's consideration shall include, but not be limited to, whether counseling between Father and J.B.M. is necessary to attempt to restore and/or save the parent-child relationship. In addition, the trial court shall consider all of the Section 5328(a) custody factors and delineate the reasons for its decision pursuant to all relevant statutory and case law. *See A.V. v. S.T.*, 87 A.3d 818 (Pa. Super. 2014); 23 Pa.C.S.A. § 5323(d).

Pending the trial court's consideration of J.B.M.'s best interest in accordance with this memorandum, the trial court immediately shall reinstate the temporary custody order entered on February 25, 2015, insofar

as that order granted Father periods of partial physical custody of J.B.M. on alternating weekends and one evening per week for three hours. The trial court has discretion to require that a mutually agreed-upon third party supervise the custodial periods or, in the alternative, that custody is exercised in a public location. In addition, the trial court may require Father to utilize a portion of his weekly period of partial physical custody to speak jointly with J.B.M. and a counselor or a youth minister of J.B.M.'s choosing, provided that the failure to select a mediator will not impede Father's visits with his son. If J.B.M. is unable to select a qualified person to mediate his grievances with Father, or the parties cannot agree on an acceptable third party to supervise the weekend visits, the trial court will appoint one. Mother and Father shall split equal responsibility for any fees and costs associated with supervision and counseling.

Order vacated, in part, and affirmed, in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Bowes joins in this memorandum.

Judge Platt files a concurring and dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2016

- 17 -