J-A28030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| TODD E. SMELTZER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICIA K. SMELTZER | : | No. 896 MDA 2021 |

Appeal from the Order Entered June 24, 2021
In the Court of Common Pleas of York County Civil Division at No(s):
2005-FC-001705-03

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JANUARY 06, 2022**

Appellant Todd E. Smeltzer (Father) appeals from the order modifying his custodial rights to his minor children K.P.S, born in 2009, and A.K.S., born in 2010 (collectively, the Children).[1]  Father argues that the trial court erred in modifying his custodial rights without cause and without conducting an analysis of the custody factors in 23 Pa.C.S. § 5328(a).  Father also contends that the trial court committed an error of law and abused its discretion in questioning Father's decision to take away the Children's cell phones and in speculating as to what steps Father may have to take to see the Children.  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Appellee Patricia Smeltzer is the Children's mother (Mother).  Mother and Father have a third child, A.T.S., who was born in 2004.  A.T.S. is not subject to the custody order on appeal.  Trial Ct. Op., 7/21/21, at 1.

The trial court briefly summarized the relevant facts and procedural history of this case as follows:

This [appeal] involves a custody matter that has been litigated since 2005. The most recent custody order was entered by stipulation on March 4, 2020. This agreement provided that Mother would have sole legal custody and primary physical custody of the minor children. Meanwhile, Father was to have rights of partial physical custody of the two younger minor children only. The order was reaffirmed by this [c]ourt on December 22, 2020. In this order, the [c]ourt made some clarifications in that Father's custodial time of the two youngest children was the second weekend of the month. Furthermore, a parenting coordinator was appointed by separate order[,] and the reunification counseling was ordered. On January 11, 2021, the [c]ourt issued an order appointing a parenting coordinator. The parenting coordinator submitted two sets of recommendations on February 4, 2021[,] and April 16, 2021. This [c]ourt issued an order adopting the February 9, 2021 recommendations on February 19, 2021. On April 19, 2021, Father appealed the April 16, 2021 recommendations. Additionally, Father filed a petition for contempt on April 28, 2021.

On June 21, 2021, this [c]ourt held a combined hearing on Father's appeal and petition for contempt. The [c]ourt subsequently entered an order denying Father's appeal on the parent coordinator's recommendations, limited Father's visitation to teleconference until the therapists agreed that it was safe for the children to return to in person visits, and found Mother in contempt for failure to make the children go to visitation with Father. On July 7, 2021, Father filed a notice of appeal and his concise statement of matters complained of [on appeal].

Trial Ct. Op., 7/21/21, at 1-2 (citations omitted). The trial court filed its Pa.R.A.P. 1925(a) opinion on July 21, 2012. *See id.*

On appeal, Father presents the following issues:

1. The trial court erred as a matter of law by terminating Father's rights of partial physical custody without engaging in an analysis of the custody factors pursuant to 23 Pa.C.S. § 5328.

2. The trial court erred as a matter of law and committed a gross abuse of discretion by indicating that "for Father to succeed in getting live partial custody time with these children, it will probably have to be that the children agree they want to go and/or that Dr. Hutchko or some other professional recommends live visits."

3. The [trial court] erred in finding Father at fault by taking away the children's cell phones during his custodial periods of time when he did so expressly at the direction of the parent coordinator's order.

Father's Brief at 7-8 (formatting altered).[2,3]

Our standard and scope of review of modifications to custody orders are

as follows:

The appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not

_____

[2] In his brief, Father included an additional issue and claimed that the trial court abused its discretion when it amended the custody order. Father's Brief at 7. However, Father notes that this issue coincides with the first issue, and he argues these first two issues as a single challenge. **See** Father's Brief at 36. We will likewise address these issues concurrently.

[3] The trial court notes that Father may not have properly preserved his issues on appeal due to his failure to offer a specific objection. Trial Ct. Op., 7/21/21, at 4-5; **see** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). However, the notes of testimony reflect that after the trial court announced its findings and order on the record in open court, Father's counsel challenged the trial court's conclusions. N.T., 6/21/21, at 138-141. Under the facts of this case, we conclude that counsel's challenges to the trial court's order and the impact of that order were sufficient to preserve Father's issues on appeal. Accordingly, we decline to find waiver.

interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

On issues of credibility and weight of the evidence, we defer to the findings of the trial court who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (some formatting altered and citations omitted). "The test is whether the evidence of record supports the trial court's conclusions" and whether the conclusions are grounded in a comprehensive evaluation of the best interest of the child. *Id.* (citation omitted).

**Custody Factors**

Father first contends that the trial court failed to consider the custody factors set forth in Section 5328(a). Father also asserts that to the extent that the trial court did consider and weigh the factors, its findings were unsupported, and the trial court abused its discretion in modifying the custody order.

Section 5328(a) provides as follows:

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

- 4 -

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by

another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a). Moreover, "[t]he court shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen factors [from Section 5328(a)] prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013).

It is undisputed that Father had thirty days from the date the order was entered on June 21, 2021, in which to file an appeal. *See* Pa.R.A.P. 903(a). Therefore, the trial court had until July 21, 2021 to file a statement of its reasons for the June 21, 2021 order and its assessment of the Section 5328(a) factors. *C.B.*, 65 A.3d at 955. Here, the trial court filed its opinion on July 21, 2021, and it specifically addressed the factors from Section 5328(a). *See* Trial Ct. Op., 7/21/21, at 4-7. Therefore, we conclude that there is no merit to Father's assertion that the trial court failed to consider the Section 5328(a) factors. Accordingly, we turn to Father's claim that the trial court abused its discretion in its assessment and consideration of the Section 5328(a) factors.

Father challenges the trial court's consideration of factors 1, 2, 6, 7, 8, 13, and 16 from Section 5328(a), and claims the court's findings are

unsupported by the record. Father's Brief at 18-35. After review, we disagree.

The trial court first addressed Section 5328(a)(1), concerning which party is more likely to encourage and permit frequent and continuing contact between the Children and another party, as follows:

> At first it would appear that this factor should be in favor of Father because Mother should have made the children go to see Father and Mother was found in contempt for not doing so. However[,] this factor is ameliorated by the fact that the [C]hildren really refused to go with the Father[,] and Mother tried diligently to make them go each time to the custodial time with the Father. So this factor ends up being neutral.

Trial Ct. Op., 7/21/21, at 5 (footnote omitted).

Father argues that the trial court's conclusions are flawed. Father's Brief at 18-19. Father asserts that Mother did not punish the Children for not wanting to visit Father, and that Mother did not divulge her address to Father which precluded Father from sending the Children gifts. *Id.* at 20-22.

We find Father's claim meritless as there is no evidence that Mother prompted the Children to refuse to see Father. As the trial court noted, despite Mother's best efforts, it was the Children who chose not to visit Father during his defined custody periods. Trial Ct. Op., 7/21/21, at 5. Repeatedly, although Mother drove the Children to the designated exchange location, the Children refused to leave with Father. N.T., 6/21/21, at 13-21. On multiple occasions, Mother spent hours in her car at the exchange location trying to convince the Children to go with Father. *Id.* at 15-20. Indeed, on one

occasion where the Children got out of Mother's car and walked to Father's car, the Children returned to Mother's car in tears. Mother called the police, but when the police arrived, they informed Mother and Father that they could not force the Children to go with Father. *Id.* at 14-15.[4]

With respect to Father's complaint that Mother refused to give him her address, we note that Mother has a PFA against Father. *Id.* at 13. Father cannot contact Mother other than through a custody communication application, Father cannot approach Mother's vehicle, and Mother and Father do not exchange custody at Mother's home. *Id.* at 13-14. However, there is no indication that Father was precluded from bringing gifts to the exchange location or finding some other reasonable means of delivery. Considering the PFA, it is reasonable to find that Mother's refusal to divulge her address was not an effort to preclude contact between the Children and Father. We conclude that the trial court committed no abuse of discretion in considering this first factor.

The trial court next addressed Section 5328(a)(2):

> The [C]hildren said clearly that they are afraid of [Father] and that his treatment of them can rise to emotional abuse. There was plenty of evidence that Father was "shaky" and "shaking" at custodial times and Father refuses to get help for this anger

---

[4] Father also notes that the trial court found Mother in contempt of the custody order. Father's Brief at 19. Although the trial court did find Mother in contempt, *see* N.T., 6/21/21, at 136, it was not because Mother caused the Children to refuse to see Father. Rather, the trial court explained that Mother should have come to court with an emergency petition for relief instead of "acquiescing to the [C]hildren's refusals." *Id.* at 135-36. The trial court then directed Mother to pay $100 towards Father's counsel fees. *Id.* at 136.

problem and therefore the emotional abuse of these two children by father makes this a factor heavily in favor of [M]other. Importantly, this [c]ourt witnessed Father shaking . . . as the [c]ourt was dictating the current order. It should also be noted that the therapist for the [C]hildren testified that the [C]hildren are afraid of being physically abused by Father.

Trial Ct. Op., 7/21/21, at 5.

Father contends that there is no evidence that he has physically abused the Children, and he claims that Section 5328(a)(2) concerns only the physical abuse of the Children and not other forms of abuse. However, Father provides no support for this supposition.

It is well settled that issues that are not supported by a developed argument citing pertinent legal authority is waived. *See In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) (stating that "[t]he argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities[; t]his Court will not consider the merits of an argument which fails to cite relevant case or statutory authority" (citations and quotation marks omitted)). Father's failure to develop and support this argument results in waiver.[5]

---

[5] Were we to reach this issue, we would note that the best interests of the Children are paramount, *see A.V.*, 87 A.3d at 820, and we would conclude that there is no authority or support for Father's argument that Section 5328 proscribes or involves only physical abuse while excluding from the trial court's consideration other forms of abuse. The trial court found that the Children are afraid of Father, they fear physical abuse from Father, and their emotional health is very fragile. *See* N.T., 6/21/21, at 134-35, 140. The trial court also

*(Footnote Continued Next Page)*

Father next alleges that the trial court was deficient in its consideration of Section 5328(a)(6), which concerns the relationships among siblings. The trial court discussed the sixth factor as follows:

> The two children have a sixteen-year-old brother[, A.T.S.,] who also refuses to see Father for what appears to be the same reasons. Thus, this is a factor in favor of Mother.

Trial Ct. Op., 7/21/21, at 6 (footnote omitted).

Father contends that he has voluntarily refrained from exercising custody rights with respect to A.T.S. Father's Brief at 27-28. Father argues that the older sibling, A.T.S., who is not subject to this order, "has no rational relationship to the analysis of the case at hand." *Id.* at 28. However, once more, Father provides no authority for his argument, only supposition. Father's failure to develop any argument that is supported by relevant legal authority results in waiver of the issue. *Whitley*, 50 A.3d at 209.

Father next challenges the trial court's consideration of Section 5328(a)(7). On this factor, the trial court concluded as follows:

> The preference of [the Children] is a big factor in favor of the new order which restricts Father seeing [them]. The [C]hildren were clearly frightened while being interviewed by the [c]ourt and in fact the younger child, the daughter, ended up totally clamming up and crying and saying nothing and the [c]ourt had to end the interview of her early to avoid traumatizing the child.

---

specifically found that the Children were credible in their testimony regarding their concerns with being in Father's custody. *Id.* at 140. There is no support for Father's argument that the absence of evidence of physical abuse militates in his favor.

Trial Ct. Op., 7/21/21, at 6.

Father's counsel contends that he "does not recall" any crying. Father's Brief at 29. Father also contends that the trial court questioned the Children in an effort to elicit a "predetermined response." *Id.* However, Father again provides no legal authority, only accusations. As we noted above, the trial court's findings that the Children were in fear of Father and in fear of physical abuse are supported by the record. We conclude that the absence of legal argument and citation to relevant legal authority results in waiver of this issue. *Whitley*, 50 A.3d at 209. In any event, we note that the Children's preference was clear from the record, and as noted above, they were afraid of Father's anger, feared physical abuse, and did not want to be in Father's custody. The trial court considered this factor and found it weighed in favor of Mother, and we find no abuse of discretion.

The trial court addressed the eighth factor, Section 5328(a)(8), concerning the attempts of one parent to turn the Children against the other parent, as follows:

> Not a factor because Mother has not tried to keep the children away from the Father and to the contrary she made every attempt to try to make the [C]hildren see Father. Moreover the [c]ourt finds that there was abuse by Father so the factor does [not] apply.

Trial Ct. Op., 7/21/21, at 6.

Father claims that the trial court found Mother in contempt and found that Mother did not punish the Children for their refusal to stay with Father.

- 11 -

Father's Brief at 32. While the record supports Father's claim that Mother was found in contempt and that Mother did not punish the Children for refusing to visit Father, we cannot agree that this is evidence that Mother has turned the Children against Father. As noted above, the Children testified credibly that they fear Father and did not want to be in his custody. However, there was no evidence that Mother caused ill-will or fostered alienation toward Father. As noted above, the record supports the conclusion that Mother attempted to prompt the Children to visit Father. N.T., 6/21/21, at 15-20. Additionally, the trial court was specific in pointing out that it closely reviewed this factor and considered Father's parental alienation argument but concluded that Mother was not keeping the Children from Father. *Id.* at 134. Accordingly, we agree with the trial court in that the record supports its conclusions. Therefore, Father is entitled to no relief on this claim.

Next, the trial court considered Section 5328(a)(13), which concerns the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. The trial court explained:

> The level of conflict between the parties is not a factor because the statute says that abuse obviates this factor. Additionally, there is currently a PFA in place in which Mother is protected party and Father is the defendant.

Trial Ct. Op., 7/21/21, at 6 (footnote omitted).

On this factor, Father only reiterates his position that there was no physical abuse toward the Children. Father's Brief at 33. As we noted above, we discern no barrier to the trial court considering the Children's credible

testimony that they feared physical abuse from Father. Moreover, the record established that Mother attempted to de-escalate conflict and tried to persuade the Children to visit Father. N.T., 6/21/21, at 13-18. Mother routinely arrived at the custody exchange location in an attempt to have the Children to visit Father, and she waited with the Children for hours at the exchange location attempting to convince the Children to visit Father. *Id.* at 15-19. In one instance while Mother was trying to calm the situation by speaking to the Children in the car, Father started taking photographs until the police arrived. *Id.* at 13. The police instructed Mother and Father that they could not force the Children to leave with Father. *Id.* The officers told Father to stop taking pictures and leave the area. *Id.* We conclude that there is no abuse of discretion in how the trial court weighed this factor, and Father is entitled to no relief on this issue.

Finally, the trial court addressed Section 5328(a)(16), regarding "any other relevant factor," as follows:

> Other factors: The fear that these children have about seeing their Father is reasonable. Two therapists testified that the [C]hildren's emotional health would be compromised if they are forced to visit Father. Therefore, this factor is very much in favor of the order that the court made in this case.

Trial Ct. Op., 7/21/21, at 7. (footnote omitted).

Father argues that the trial court's conclusion does not foster Father's relationship with the Children. Father's Brief at 34. Father asserts that "[i]t is hard to imagine how the trial court's order and its analysis pursuant to the

sixteen factors remotely complies with its responsibility to save father's relationship with his children." *Id.* (citing *Lewis v. Lewis*, 414 A.2d 375 (Pa. Super. 1979)).

In *Lewis*, the Court stated that in a custody matter, the trial court has the "authority and the responsibility to attempt to save any family relationship which existed." *Lewis*, 414 A.2d at 378. However, although preserving family relationships is a goal, because this is a custody matter, the best interests of the Children are paramount. *A.V.*, 87 A.3d at 820. As stated above, the trial court concluded that the Children testified credibly that they feared Father's behavior and were afraid of physical abuse. The trial court considered their testimony and found that forcing the Children to visit Father would not be in their best interest and would be detrimental to the Children's emotional health. Based on this record, we discern no abuse of discretion with respect to Section 5328(a)(16).

In sum, the trial court considered and weighed the factors from Section 5328(a). The trial court then determined that it was in the best interests of the Children to modify the custody order. As discussed above, the trial court's findings relative to the Section 5328(a) factors are supported by the record. On this record, we discern no abuse of discretion, and we conclude that the trial court's order is in the Children's best interests. *See A.V.*, 87 A.3d at 820. Therefore, Father is not entitled to relief.

**The Trial Court's Comments Regarding the Children's Wishes**

In his next issue, Father argues that the trial court erred as a matter of law and committed a gross abuse of discretion by commenting on the record that "for Father to succeed in getting live partial custody time with these children, it will probably have to be that the children agree they want to go and/or that Dr. Hutchko or some other professional recommends live visits." Father's Brief at 37. Father takes issue with these comments and argues that the Children's preference concerning custody is not a controlling custody factor. *Id.* at 38 (citing *McMillen v. McMillen*, 602 A.2d 845, 847 (Pa. 1992) (stating that although the child's express wishes are an important factor for the court to consider, the child's wishes are not controlling in custody cases); *E.A.L. v. L.J.W.*, 662 A.2d 1109 (Pa. Super. 1995) (same)). Additionally, Father states that the trial court cannot delegate the decision concerning the amount and nature of custody to a third party. *Id.* at 39-40 (citing *M.G. v. L.D.*, 155 A.3d 1083, 1098 (Pa. Super. 2017) (stating that the trial court improperly delegated to the child advocate a determination regarding the amount of communication between a parent and child)).

Mother counters that the trial court's remark was made after its examination and consideration of the custody factors. Mother's Brief at 36. Specifically, Mother asserts:

> In making the disputed statement, the [t]rial [c]ourt was merely emphasizing two critical factors that bore on its ultimate decision. Father erroneously asserts that the court has stated these factors as exclusive pre-conditions to live visitation, to the exclusion of consideration of all the other statutory factors. In so arguing,

- 15 -

Father ignores the [t]rial [c]ourt's lengthy treatment of the statutory factors and the well-reasoned balancing that was employed in reaching its decision.

*Id.*

Upon review, we conclude that Father overstates a single aspect of the trial court's remarks and challenges it out of context. As we have noted, in custody matters we apply an abuse of discretion standard, defer to the trial court's credibility determinations, and are mindful that the best interests of the Children are paramount. *A.V.*, 87 A.3d at 820. The trial court's full statement on the record, which was incorporated into the June 24, 2021 order, is set forth in its entirety as follows:

> In this matter, we have taken testimony and re-interviewed the [C]hildren in camera on cross contempt petitions as well as [M]other's petition for modification as well as [F]ather's appealing of the parent coordinator's recommended order.
>
> The order in this matter, as a result of all the testimony and the interviews and so forth, is as follows: [F]ather's appeal of the order of February 16, 2021 from the parent coordinator is denied. And to the extent it's relevant, that order is reaffirmed.
>
> Secondly, [M]other is found in contempt of [c]ourt for not making the [C]hildren go with [Father]. The court opines that [M]other should have made an alternative course of action by taking in to court some kind of a petition for emergency relief or something and not just acquiescing to the [C]hildren's refusals. Accordingly, [M]other is found in contempt of court. She will pay the sum of $100 in attorneys' fees to [F]ather's attorney by August 31, 2021.
>
> The operative order in this matter is the order of December 18, 2020. Of course, there was some slight amendments to that made by the parent coordination order of February 16, 2021, but in any event, that operative order is amended so that [F]ather now has no live time with the [C]hildren whatsoever.

- 16 -

Instead, the second weekend of each month [F]ather will have a one-hour zoom visit with the [C]hildren. That can be one hour with them together or a half an hour with them separately, but one hour in the aggregate, and that will take place on the second Saturday of each month.

Additionally, [F]ather may have two phone calls with both of the [C]hildren per week not to exceed 15 minutes for each phone call. If it can be arranged and the [C]hildren do not object, the phone calls may also be by zoom or skype or FaceTime or equivalent, and the [c]ourt is using the term zoom to include all of those video types of communication.

Father's live visits with the [C]hildren are suspended until further order of [c]ourt. The court will obviously have to take any petition to modify by either party but wants to make it clear that for [F]ather to succeed in getting live partial custody time with these children, it will probably have to be that the [C]hildren agree they want to go and/or that Dr. Hutchko or some other professional recommends live visits.

The reunification counseling that was ordered in the December 18, 2020 order will continue as per that order and everybody will cooperate in that counseling.

The [c]ourt wants to make it clear, as we did back on December 18, 2020, that the court does want the [C]hildren to have a normal relationship with [F]ather. Having said that, that may take some change in [F]ather's actions and/or attitudes.

And the [c]ourt will state that the [c]ourt is puzzled by some of [F]ather's actions, including taking away cell phones which would make the [C]hildren feel more secure at his home. The [c]ourt opines that once the [C]hildren's visits would be restored sometime in the future, that they should always have their cell phones present and that [F]ather should not take them away as a form of punishment or thinking that somehow they are interfering with his time.

The [c]ourt does not make a finding one way or the other as to whether there is any parent alienation going on by [M]other. The court is not convinced that there is as yet, but upon any further modification petition, that possibility is still open.

The [c]ourt also recommends but does not order the children do visit with paternal grandmother who lives in the Altoona area, and

> it's recommended that [M]other reach out to paternal grandmother to try to arrange some visits there if at all possible.
>
> This is a final order and incorporates all the provisions of the final order of December 18, 2020 except as modified herein.

N.T., 6/21/21, at 135-38.[6]

Although the trial court digressed and made the above extemporaneous statement while dictating the order, we do not conclude that it constitutes an abuse of discretion or amounts to reversible error. *See A.V.*, 87 A.3d at 820. The trial court never made the Children's wishes and/or the opinion of a doctor conditions precedent for Father to regain custody or live visitation. Indeed, the trial court merely remarked that in order to regain live visitation, it would "**probably**" require the Children to agree and/or a therapist to recommend it. *Id.* at 137 (emphasis added). The trial court then stated that reunification counseling was to continue and that it wants the Children to have a normal relationship with Father. *Id.* at 137-38. Additionally, the trial court never abdicated its responsibility to resolve these custody issues. As discussed in our resolution of Father's first claim, the trial court considered and weighed the Section 5328(a) custody factors and modified the custody order. The trial court then made the remark that Father challenges.

When read as a whole, the trial court made proper custody considerations, noted factors where issues existed, made statements concerning possible future considerations, and noted that Father had to make

---

[6] This is the language that appears in the June 24, 2021 order that is on appeal. Order, 6/24/21.

changes. On this record, we cannot find that the trial court stated its intent to pre-decide or ignore its judicial responsibilities. Rather, pursuant to statute, all the factors from Section 5328(a), including the Children's wishes and any recommendations from professionals, must be considered and weighed in a subsequent petition for modification. After review, we do not conclude that the trial court committed reversible error or abused its discretion in making the aforementioned comments.

**The Children's Cell Phones**

In his final issue, Father asserts that the trial court erred in finding Father at fault for taking away the Children's cell phones during his custodial periods. We conclude that this issue is meritless.

Similar to the preceding issue, Father asserts that the trial court erred in remarks it made on the record. In this instance, Father refers to the portion of the order, which is quoted in its entirety above, where the trial court referenced the Children's cell phones, and noted:

> And the [c]ourt will state that the [c]ourt is puzzled by some of [F]ather's actions, including taking away cell phones which would make the [C]hildren feel more secure at his home. The [c]ourt opines that once the [C]hildren's visits would be restored sometime in the future, that they should always have their cell phones present and that [F]ather should not take them away as a form of punishment or thinking that somehow they are interfering with his time.

Father's Brief at 41. (citing N.T., 6/21/21, at 137; Order, 6/24/21).

Once more, we conclude that Father emphasizes a portion of the trial court's remarks out of context. Indeed, the trial court fully addressed this issue as follows:

It is denied that this [c]ourt erred as a matter of law or abused its discretion in finding Father at fault by taking away the [C]hildren's cell phones during his custodial period of time when he did so expressly at the direction of the parent coordinator's order. Namely, the [c]ourt did not find Father at fault for this matter. The [c]ourt can only assume Father is referencing a portion of the June 21, 2021 [o]rder that states the following: "the [c]ourt will state that the [c]ourt is puzzled by some of Father's actions, including taking away cell phones which would make the children feel more secure at his home." Order, [6/21/21,] at 4. Importantly, there is nothing in this statement that makes any sort of finding. Rather, it simply indicates that the [c]ourt was confused by Father's claims and therefore, this affected Father's credibility. Therefore, this [c]ourt did not err as a matter of law or abuse its discretion.

Trial Ct. Op., 7/21/21, at 15.

We agree with the trial court's assessment. Although the trial court made the statement concerning the cell phones while dictating the order, we do not conclude that it constitutes an abuse of discretion or amounts to reversible error. The trial court stated that it made this comment about Father taking the Children's cell phones in the context of considering Father's credibility. Additionally, the trial court indicated that it did not in any fashion make the cell phones a condition precedent for Father to regain custody or live visitation. The trial court noted that it was "puzzled" by Father's actions and stated that if Father regains custody, the Children "should" have their cell phones because having the cell phones would make the Children feel more

secure with Father, and that Father should not take away the cell phones as a punishment. Further, we agree with the trial court that Father's argument that the Children having cell phones interferes with his custody time is not supported by the record. N.T., 6/21/21, at 137. Based on this record, we do not conclude that the trial court committed an error of law or abused its discretion in making this comment.

After review, we find no abuse of discretion or error of law in the trial court's order modifying custody. Accordingly, we affirm the trial court's June 24, 2021 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/06/2022